UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWN ADAMS, | : CIVIL ACTION NO. 3:CV-14-1448 |
| Petitioner | : (Judge Nealon) |
| v. | : |
| PENNSYLVANIA BOARD OF PROBATION AND PAROLE | : |
| Respondent | : |

## **MEMORANDUM**

Shawn Adams, an inmate confined at the State Correctional Institution, Dallas ("SCI-Dallas"), Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Adams challenges a decision by the Pennsylvania Board of Probation and Parole ("the Board") to deny him reparole. The petition is ripe for disposition. For the reasons that follow, the petition will be denied.

## **Background**

On November 7, 1996, the Court of Common Pleas of Luzerne County sentenced Adams to a term of nine to twenty years for Criminal Homicide. (Doc. 8-2 at 2, Sentence Status Summary). The original minimum and maximum dates for this sentence were August 12, 2005 and August 12, 2016, respectively. Id.

On October 11, 2005, the Board paroled Adams from this sentence to reside in the Minsec Scranton center. (Doc. 8-1, Declaration of Rachel Macnamara, Parole Manager for the Board).

On November 17, 2005, Minsec Scranton discharged Adams from the program prior to successful completion. Id. The Board arrested Adams that same day for violating his parole. Id. Following a violation hearing, the Board recommitted Adams as a technical parole violator for violating condition #7 (failure to successfully complete the Minsec program) of his parole by decision mailed April 13, 2006 (recorded 03/29/2006). (Id. at 4). Despite the parole revocation, Adams' maximum sentence date remained August 12, 2016. Id. Thereafter, the Pennsylvania Department of Corrections adjusted Adams' maximum sentence structure by adding one day to both his minimum and maximum sentence dates. Id. This resulted in controlling minimum and maximum sentence dates of August 13, 2005 and August 13, 2016, respectively. Id.

On May 12, 2008, The Board reparoled Adams from this sentence on May 12, 2008 to reside in the Scranton Community Corrections Center. (Doc. 8-2 at 14, Order to Release/Reparole). Between his release on parole and December

2

18, 2009, the Board issued several warnings and held an administrative conference for Adams based on several urine samples that tested positive for alcohol, marijuana and THC and other improper conduct. (Doc. 8-2 at 19-20, Supervision History).

On December 18, 2009, police arrested Adams for new criminal charges stemming from a DUI incident occurring on June 27, 2009. Id. Those charges were docketed in the Court of Common Pleas of Luzerne County at CP# 0547-2010. See Comm of Pa v. Adams, Docket Number: CP-40-CR-0000547-2010). The court released Adams on unsecured bail from the charges at CP# 0547-2010 on December 18, 2009. Id. The Board lodged its detainer against Adams that same day for parole violations thereby preventing his release from custody. Id. Adams was returned to a state correctional institution on December 18, 2009. Id.

By Notice of Board Decision recorded on April 19, 2010 and mailed on April 27, 2010, the Board recommitted Adams as a technical parole violator for violating conditions: #3B (failure to report an arrest within 72 hours), #5A (use of drugs), #7 CT1 (alcohol consumption) and #7 CT2 (entering establishments that sell or dispense alcohol) of his parole. (Doc. 8-2 at 22-23, Notice of Board

3

Decision).

On October 13, 2010, Adams pled guilty to three counts of DUI at CP# 0547-2010. See Comm of Pa v. Adams, Docket Number: CP-40-CR-0000547-2010). On October 27, 2010, the court sentenced Adams to serve a term of 72 hours to 6 months for the new convictions. Id.

On October 26, 2010, Adams waived his right to a revocation hearing on the new convictions. (Doc. 8-2 at 28, Waiver of Revocation Hearing and Admission Form). By Notice of Board Decision mailed February 16, 2011 (recorded 12/28/2010), the Board recommitted Adams as a convicted parole violator for his three counts of DUI at CP# 0547-2010. (Doc. 8-2 at 25, Notice of Board Decision). The Board's decision also recalculated Adams' maximum sentence date from August 13, 2016 to April 30, 2018 based on his recommitment as a convicted parole violator. Id. The decision notified Adams of the following: "IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER." Id.

By Notice of Board Decision recorded on September 1, 2011, the Board denied Adams reparole for the following reasons: (a) Adams' need to

participate in and complete additional institutional programs; (b) Adams' risk and needs assessment indicating your level of risk to the community; (c) The negative recommendation made by the Department of Corrections; and (d) Adams' prior unsatisfactory parole supervision history. (Doc. 8-2 at 28, Notice of Board Decision).

By Notice of Board Decision recorded on August 7, 2012, the Board denied Adams reparole for the following reasons: (a) Adams' risk and needs assessment indicating your level of risk to the community; (b) Adams' prior unsatisfactory parole supervision history; (c) Reports, evaluations and assessments/level of risk indicates Adams' risk to the community; and (d) Adams' failure to demonstrate motivation for success. (Doc. 8-2 at 31, Notice of Board Decision). Adams was to be scheduled for parole review again in, or after, May 2013. Id.

The Board interviewed Adams for reparole a third time on May 22, 2013 and denied him parole by decision recorded June 19, 2013. (Doc. 8-2 at 34, Notice of Board Decision). The Board last interviewed Adams for reparole on May 29, 2014 and denied him parole by decision recorded on June 26, 2014. (Doc. 8-2 at 37, Notice of Board Decision). The June 26, 2014 decision denied Adams

5

parole based on the following reasons: (1) Adams' risk and needs assessment indicating his level of risk to the community; (2) Adams' prior unsatisfactory parole supervision history; (3) Reports, evaluations and assessments/level of risk indicates Adams' risk to the community; (4) Adams' minimization of the nature and circumstances of the offenses committed; and (5) Adams lack of remorse for the offenses committed. Id. The Board advised Adams that he would be considered again for parole in May, 2015, and at that time, the Board would be considering whether Adams had maintained a favorable recommendation for parole from the Department of Corrections and whether he maintained a clear conduct record. Id.

On July 28, 2014, Adams filed the instant petition for writ of habeas corpus in which he challenges the Board's most recent decision to deny him parole. (Doc. 1, petition). Specifically, he alleges that the Board is denying him his right to be reparoled and has listed impermissible reasons for the parole denial. Id. He states that "all programs assigned to [him] were completed without any insubordination or provocational (sic) instances of negativity", he has not had a misconduct since 2007 and has received positive recommendations from both his block officer and the prison. Id.

6

**Discussion**

The Constitution does not by itself give a convict a liberty interest in parole protected by the Fourteenth Amendment.[1] Geenholtz v. Nebraska Penal Inmates, 442 U.S. 1 (1979); Thorpe v. Grillo, 80 Fed. Appx. 215, 219 (3d Cir.2003). While the states may create a liberty interest under the Fourteenth Amendment, the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. Burkett v. Love, 89 F.3d 135, 139 (3d Cir. 1996); Rodgers v. Parole Agent SCI- Frackville, Wech, 916 F. Supp 474, 476-77 (E.D. Pa. 1996); McCrery v. Mark, 823 F. Supp. 288, 294 (E.D.Pa. 1993). The Board has complete discretion to grant or deny parole, without constraint from any particularized substantive predicates. Wagner v. Pa. Bd. Of Prob. & Parole, 2004 U.S. Dist. LEXIS 11815 (E.D.Pa.2004); 61 Pa.C.S.A. § 331.21.

The Third Circuit has held that, substantive due process, requires that the state not deny parole on unconstitutionally impermissible grounds, such as

---

[1] The Fourteenth Amendment does not require due process unless the state interferes with a protected liberty or property interest. Ohio Adult Parole Auth. v. Woodward, 523 U.S. 272, 279-286 (1998); Kentucky Dept. Of Corrections v. Thompson, 490 U.S. 454, 459, 460 (1989); Hewitt v. Helms, 459 U.S. 460, 466-71 (1983).

race, religion, ethnicity, or retaliation for exercising constitutional rights. See Bobko v. Lavan, 157 Fed. Appx. 516, 518 (3d Cir.2005); Morrissey v. Brewer, 408 U.S. 471 (1972); Burkett v. Love, 89 F.3d 135, 140 (3d Cir.1996) (stating that no liberty interest is created by the expectation of parole). Further, state action is valid if it is rationally related to a legitimate state interest. Bell v. Wolfish, 441 U.S. 520, 539, 540 (1979); Rogin v. Bensalem Twp., 616 F.2d 680, 689 (3d Cir.1980), cert. denied, 450 U.S. 1029 (1981). This relationship exists as long as it "might be thought" that the state's action was a rational way to solve a problem. Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 488 (1955); Sammon v. N.J. Bd. of Med. Examiners, 66 F.3d 639, 645 (3d Cir.1995).

Pennsylvania law grants the Parole Board vast discretion to refuse or deny parole. See 61 Pa.C.S.A. § 331.21. The statute provides:

> The Board is hereby authorized to release on parole any convict confined in any penal institution of this Commonwealth as to whom power to parole is herein granted to said board ... whenever in its opinion the best interests of the convict justify or require his being paroled and it does not appear that the interests of the Commonwealth will be injured thereby.... Said board shall have the power during the period for which a person shall have been sentenced to recommit one paroled for violation of the terms and conditions of his parole and from time to time reparole and recommit in the same manner and with the

8

> same procedure as in the case of an original parole or recommitment ...

The law also authorizes the Board, in its discretion, to consider various factors, similar to those considered in Petitioner's case, in granting or denying parole. See 61 Pa.C.S.A. § 331.19.[2] Pennsylvania courts have affirmed the Board's complete discretion to parole a convict. See e.g., Rogers v. Bd. of Prob. & Parole, 724 A.2d 319 (Pa.1999); Weaver v. Bd. of Prob. & Parole, 514 A.2d 967, 971 (Pa. Commw.1986); Reider v. Bd. of Prob. & Parole, 514 A.2d 967 (Pa. Commw.1986). The convict has no right to reparole. Counts v. Bd. of Prob. & Parole, 487 A.2d 450 (Pa. Commw.1985). "Federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision." Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir.2001).

---

[2]Section 331.19 provides in relevant part:
It shall be the duty of the board...to consider the nature and circumstances of the offense committed, any recommendations made by the trial judge and prosecuting attorney, the general character and background of the prisoner.... The board shall further cause the conduct of the person while in prison and his physical, mental and behavior condition and history, ... his complete criminal record, as far as the same may be known, to be reported and investigated.

Moreover, even if an inmate successfully completes a treatment program, Pennsylvania's parole scheme does not create a predictable expectation of parole upon completion of a rehabilitation program. Charles v. Witman, Civ. No. 3:CV-94-1713, slip op. at 3 (M.D. Pa., July 20, 1995) (J. Vanaskie). Furthermore, the Board is the sole determiner whether an inmate is rehabilitated and able to serve the remainder of his sentence on parole. Myers v. Ridge, 712 A.2d 791, 794 (Pa.Cmwlth. 1998) ("It is for the Board alone to determine whether or not a prisoner is sufficiently rehabilitated to serve the remainder of his sentence outside the confines of prison."); Carter v. Muller, 45 F.Supp.2d 453, 457 (E.D. Pa., 1999) quoting 61 P.S. §331.19 ("considering a prisoner's participation in treatment is entirely consistent with the Parole Board's duty to 'procure information as full and complete as may be obtainable with regard to the character, mental characteristics, habits, antecedents, connections, and environment' of the prospective parolee."); see also Weaver v. Pennsylvania Bd. of Probation and Parole, 688 A.2d 766, 775 (Pa.Commw.Ct. 1997) ('the Board's requirement that he receive treatment and be 'cured' prior to being released on parole ... is a legitimate requirement imposed by the Board to ensure that a prisoner is suitable for parole").

10

Adams does not allege that he was denied parole on the basis of his race, religion or ethnicity. As previously noted, it has been repeatedly recognized that Pennsylvania state law does not confer its inmates with a legally protected interest in parole eligibility. Consequently, it cannot be concluded that the Board's decisions to deny Adams parole was based on constitutionally impermissible reasons. Consequently, the petition for writ of habeas corpus will be denied. An appropriate Order follows.

Dated: January 25, 2016                    /s/William J. Nealon
                                           **United States District Judge**